IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NAIRN D. NEWELL,

        Petitioner,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

v.

CASE NO. 1D16-2025

FLORIDA DEPARTMENT OF
CORRECTIONS,

        Respondent.

_____/

Opinion filed March 3, 2017.

Petition for Writ of Certiorari -- Original Jurisdiction.

Nairn D. Newell, pro se, Petitioner.

Kenneth S. Steely, General Counsel, and Gayla Grant, Assistant General Counsel, Florida Department of Corrections, Tallahassee, for Respondent.

PER CURIAM.

Petitioner, Nairn D. Newell, seeks to compel the Florida Department of Corrections ("FDOC") to award him 60 days of gain-time to which he asserts he is entitled following the completion of his general educational development certificate ("G.E.D."). We have jurisdiction in accordance with Sheley v. Florida Parole Commission, 703 So. 2d 1202 (Fla. 1st DCA 1997), and determine that the FDOC has

the statutory authority to award, within its discretion, 60 days of gain-time to inmates whose crimes were committed on or after October 1, 1995, and who have completed their G.E.D. certificate.

In the FDOC's administrative ruling, for which the circuit court denied certiorari relief, the FDOC concluded that it had no authority to consider petitioner's request for the one-time 60-day gain-time award because the statute providing for such an award, section 944.275(4)(d), Florida Statutes, does not apply to inmates like petitioner whose offenses were committed on or after October 1, 1995. We disagree; although the 60-day award is clearly within the FDOC's discretion, the FDOC was required, at a minimum, to consider petitioner's request.

Subparagraphs 944.275(4)(b)1-3 govern the award of monthly incentive gain-time as follows:

> (b) For each month in which an inmate works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department <u>may grant incentive gain-time in accordance with this paragraph.</u> The rate of incentive gain-time in effect on the date the inmate committed the offense which resulted in his or her incarceration shall be the inmate's rate of eligibility to earn incentive gain-time throughout the period of incarceration and shall not be altered by a subsequent change in the severity level of the offense for which the inmate was sentenced.
>
> 1. For sentences imposed for offenses committed prior to January 1, 1994, up to 20 days of incentive gain-time may be granted. If granted, such gain-time shall be credited and applied monthly.

2. For sentences imposed for offenses committed on or after January 1, 1994, and before October 1, 1995:

a. For offenses ranked in offense severity levels 1 through 7, under former s. 921.0012 or former s. 921.0013, up to 25 days of incentive gain-time may be granted. If granted, such gain-time shall be credited and applied monthly.

b. For offenses ranked in offense severity levels 8, 9, and 10, under former s. 921.0012 or former s. 921.0013, up to 20 days of incentive gain-time may be granted. If granted, such gain-time shall be credited and applied monthly.

3. <u>For sentences imposed for offenses committed on or after October 1, 1995, the department may grant up to 10 days per month of incentive gain-time, except that no prisoner is eligible to earn any type of gain-time in an amount that would cause a sentence to expire, end, or terminate, or that would result in a prisoner's release, prior to serving a minimum of 85 percent of the sentence imposed</u>. For purposes of this subparagraph, credits awarded by the court for time physically incarcerated shall be credited toward satisfaction of 85 percent of the sentence imposed. Except as provided by this section, a prisoner shall not accumulate further gain-time awards at any point when the tentative release date is the same as that date at which the prisoner will have served 85 percent of the sentence imposed. State prisoners sentenced to life imprisonment shall be incarcerated for the rest of their natural lives, unless granted pardon or clemency.

§ 944.275(4)(b)1-3, Fla. Stat. (emphasis added). Subparagraph 944.275(4)(d), which

provides for the 60-day educational gain-time award, reads in relevant part:

Notwithstanding subparagraphs (b)1. and 2., the education program manager shall recommend, and the Department of Corrections may grant, a one-time award of 60 additional days of incentive gain-time to an inmate who is otherwise eligible and who successfully completes requirements for and is awarded a high school equivalency diploma or vocational certificate.

3

§ 944.275(4)(d), Fla. Stat.

The FDOC's position is that because the 60-day award is granted all at once pursuant to the educational gain-time award subsection, it would necessarily be in excess of the 10-day-per-month cap established in the general gain-time subsection. The FDOC also argues that because subparagraph (d) of the educational award subsection begins with, "[n]otwithstanding subparagraphs (b)1. and 2," but omits mention of subparagraph (b)3 regarding the award of gain-time for offenses that occurred on or after October 1, 1995, the statutory construction doctrine of *expressio unius est exclusio alterius* requires a reading that subparagraph (d) does not apply to inmates whose offenses were committed on or after October 1, 1995. We disagree with the FDOC.

Judge Benton, in his concurrence in <u>Perez v. McNeil</u>, 995 So. 2d 989 (Fla. 1st DCA 2008), noted that the FDOC's interpretation of the educational gain-time subsection was not the only interpretation. Judge Benton first noted the FDOC's position as posited by the Staff Analysis of the educational gain-time subsection's bill: "If the Staff Analysis is correct that no more than ten days of incentive gain-time of whatever kind can be awarded per month, a 60-day award, whether for educational achievement under subsection (d)-or, indeed, for heroism under subsection (c)-can never be made (at least in a single month) against a sentence imposed for an offense occurring on or after October 1, 1995." <u>Perez</u>, 995 So. 2d at 991 (Benton, J.,

4

concurring) (citing Fla. H.R. Comm. on Corr., HB 687 (1995) Staff Analysis 3 (final Jul. 13, 1995) (on file in the State Archives)). However, Judge Benton further stated, "[t]his is not . . . the only possible reading of section 944.275(4)(b), which can also be read as imposing the ten-day-per-month limit only on 'incentive gain-time [granted] in accordance with this paragraph,' i.e., section 944.275(4)(b)." Id. at n.2 (emphasis added).[*]

Faced with the question of which is the correct reading, we conclude that from the face of the statute itself, the second reading is correct; the phrase "in accordance with this paragraph" operates to limit the general incentive gain-time subsection 944.275(4)(b) and does not affect the educational gain-time award provided for under a separate subsection, 944.275(4)(d).

There are two problems with the reading urged by the FDOC: 1) the omission of subparagraph (3) from the educational gain-time award subsection is not dispositive because the educational gain-time award subsection was enacted before subparagraph

---

[*] In Perez v. McNeil, as noted in Judge Benton's concurrence, this court held the inmate whose offense was committed on or after October 1, 1995, was ineligible to receive the 60-day gain-time award for completing his G.E.D. not because of the date his offense was committed, but because the gain-time award would have caused the inmate to serve less than 85% of his sentence contrary to section 944.275(4)(b)3, Florida Statutes. Perez v. McNeil, 995 So. 2d 989 (Fla. 1st DCA 2008) (Benton, J., concurring). No similar allegation that the award of the educational gain-time would cause appellant to serve less than 85% of his sentence has been raised here.

5

(3) was added to the general incentive gain-time subsection; and 2) it would result in repeal of a statute by implication, which is unfavored.

First, subparagraph (3) of the general incentive gain-time subsection, which requires inmates who committed their offenses on or after October 1, 1995, to serve at least 85% of their sentences, was enacted when the educational gain-time award subsection was already in existence. The failure of the educational gain-time subsection to carve out an exclusion for subparagraph (3) of the general incentive gain-time subsection, therefore, does not necessarily evince a legislative intent for subparagraph (3) to control absent a conflict, as subparagraph (3) did not exist at the time the educational gain-time subsection was created.

Second, the 85% limitation does not say anything about repealing the G.E.D. gain-time subsection; if the Legislature had wished to repeal the educational gain-time subsection, it would have been more explicit.

The only clear conflict between these subsections is the one identified in Judge Benton's concurrence in Perez, 995 So. 2d at 991-92, that the application of the educational credits cannot cause an inmate to serve less than 85% of the sentence as stated in the general gain-time subsection. That conflict is not alleged to exist in the current case.

Thus, the FDOC's reading of the statute would effectively repeal the educational gain-time award subsection by implication, determining that the gain-time awarded

would be unavailable for any inmate who committed an offense on or after October 1, 1995.

Repeal by implication is not favored. <u>Carcaise v. Durden</u>, 382 So. 2d 1236 (Fla. 5th DCA 1980). "There is a general presumption that later statutes are passed with knowledge of prior existing laws, and a construction is favored which gives each one a field of operation, rather than have the former repealed by implication." <u>Oldham v. Rooks</u>, 361 So. 2d 140, 143 (Fla. 1978); <u>see also</u> <u>State ex rel. Gerstein v. Hialeah Race Course, Inc.</u>, 245 So. 2d 53 (Fla. 1971).

> [T]he mere fact that a later statute relates to matters covered in whole or in part by a prior statute does not cause a repeal of the older statute. If two statutes may operate upon the same subject without positive inconsistency or repugnancy in their practical effect and consequences, they should each be given the effect designed for them, unless a contrary intent clearly appears.

<u>State v. Gadsden County</u>, 58 So. 232, 235 (1912).

The two subsections involved in the instant case can be read so that they are not inconsistent. That is, the 60-day G.E.D. statute cannot cause an inmate to serve less than 85% of a sentence; in all other cases, the FDOC has discretion to grant the educational gain-time award.

We, therefore, hold that the FDOC's conclusion that it is entirely without authority even to consider the 60-day educational gain-time award for inmates whose offenses were committed on or after October 1, 1995, was erroneous. Although the

7

ultimate decision of whether to grant the 60-day award is discretionary and subject to the 85%-of-sentence requirement discussed in subparagraph 944.275(4)(b)3, the FDOC had a ministerial duty to consider the request and at its discretion, either grant or deny it.

Accordingly, we GRANT the petition for writ of certiorari, QUASH the order of the lower tribunal denying petitioner's petition for writ of mandamus, and REMAND for further proceedings consistent with this opinion.

PETITION GRANTED; REMANDED.

WOLF, B.L. THOMAS, and KELSEY, JJ., CONCUR.